IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| JAMIE LICHTENSTEIN | ) |
| | ) |
|     Plaintiff, | ) |
| | )    Civil Action No. 09-1350 |
|     v. | ) |
| | ) |
| UNIVERSITY OF PITTSBURGH | ) |
| MEDICAL CENTER t/d/b/a/ UPMC; | ) |
| UPMC PRESBYTERIAN SHADYSIDE | ) |
| d/b/a WESTERN PSYCHIATRIC | ) |
| INSTITUTE AND CLINIC; UPMC | ) |
| BRADDOCK AND DEBORAH LIDEY, | ) |
| | ) |
|     Defendants. | ) |

_____ )

## MEMORANDUM OPINION

CONTI, Chief District Judge

### I.    Introduction

Pending before the court in this employment action is a motion for new trial and partial judgment as a matter of law filed by plaintiff Jamie Lichtenstein ("plaintiff"). (ECF No. 112.) Plaintiff sued her employers, defendants University of Pittsburgh Medical Center, UPMC Presbyterian Shadyside, UPMC Braddock, and Deborah Lidey ("Lidey" and collectively with the other defendants, "defendants"), for firing her in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. (ECF No. 10.) This case was tried before a jury, which rendered its verdict in favor of defendants on March 5, 2013. (ECF No. 109.) For the reasons set forth in this memorandum opinion, plaintiff's motion will be denied because she did not establish grounds warranting a new trial or a partial judgment as a matter of law under either Federal Rule of Civil Procedure 50(b) or 59(a)(1)(A).

## II.    Procedural History

On October 6, 2009, plaintiff filed a two-count complaint alleging defendants denied her leave of absence and wrongfully discharged her in violation of the FMLA. (ECF No. 1.) The basis of plaintiff's complaint is that she was fired on January 10, 2008, for calling off work on January 3, 2008, to take care of her ailing mother, an absence plaintiff argues was protected under the FMLA. Plaintiff asserted her claim for denial of leave of absence under 29 U.S.C. § 2615(a)(1), which makes it unlawful for an employer to interfere with an employee's exercise of his or her rights under the FMLA. (Id. ¶ 30; Callison v. Phila., 430 F.3d 117, 119 (3d Cir. 2005).) Plaintiff asserted her claim for wrongful discharge under 29 U.S.C. § 2615(a)(2), which makes it unlawful for an employer to retaliate against an employee for exercising his or her rights under the FMLA. (ECF No. 1 ¶ 37; Callison, 430 F.3d at 119.)

On December 14, 2009, defendants filed an answer to the complaint asserting that, among other things, plaintiff was fired "because of excessive lateness and absenteeism." (ECF No. 6 at 3.) On January 11, 2010, plaintiff filed an amended complaint asserting the same claims raised in the original complaint. (ECF No. 10.) On January 25, 2010, defendants filed an answer to the amended complaint. (ECF No. 15.) On September 17, 2010, defendants with leave of court filed an amended answer. (ECF No. 25.)

On February 25, 2011, defendants filed a motion for summary judgment with respect to both claims asserted against them. (ECF No. 34.) On April 7, 2011, plaintiff filed a brief in opposition to defendants' motion for summary judgment. (ECF No. 42.) On August 3, 2011, the court granted defendants' motion for summary judgment in its entirety. (ECF Nos. 53, 54.) Plaintiff appealed the court's decision. The Third Circuit Court of Appeals vacated the decision of the district court and remanded the case for further proceedings because genuine issues of material fact existed with respect to whether (1) plaintiff's notice of FMLA-leave was adequate

under the FMLA; (2) defendants considered plaintiff's exercise of her FMLA rights as a negative factor in her termination; and (3) defendants' legitimate, non-retaliatory reason for firing plaintiff was pretext for retaliation. <u>Lichtenstein v. Univ. of Pgh. Med. Cntr.</u>, 691 F.3d 294, 306-12 (3d Cir. 2012).

The parties prior to the start of trial filed various motions in limine. (ECF Nos. 74, 76, 83, 84.) On February 1, 2013, the court heard argument on the motions in limine. The court on motion by defendants dismissed plaintiff's claim for interference asserted under 29 U.S.C. § 2615(a)(1). On February 25, 2013, a jury trial commenced, and plaintiff's claim for retaliation asserted under 29 U.S.C. § 2615(a)(2) was tried before a jury. On March 5, 2013, the jury found in favor of defendants, i.e., the jury found defendants did not terminate plaintiff's employment in violation of her rights under the FMLA. (ECF No. 109 at 1.)

On April 3, 2013, plaintiff filed a motion for new trial and partial judgment as a matter of law and a brief in support of that motion, pursuant to Federal Rules of Civil Procedure 50(b) and 59(a)(1)(A). (ECF Nos. 112, 113.) On April 29, 2013, defendants filed a response in opposition to plaintiff's post-trial motion. (ECF No. 120.) Plaintiff's post-trial motion having been fully brief is now ripe to be decided by the court.

### III.    Standards of Review

Plaintiff asserts her motion for new trial under Federal Rules of Civil Procedure 50(b) and 59(a)(1)(A). Rule 50(b) provides:

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

FED. R. CIV. P. 50(b). Under Rule 50(b), the court must determine "whether 'viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" Eshelman v. Agere Sys., Inc., 554 F.3d 426, 433 (3d Cir. 2009) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)). "Although judgment as a matter of law should be granted sparingly, [the court shall] grant it where 'the record is critically deficient of the minimum quantum of evidence' in support of the verdict." Eshelman, 554 F.3d at 433 (quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)). The Third Circuit Court of Appeals has instructed that "'[i]n performing this narrow inquiry, [the court] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury.'" Eshelman, 554 F.3d at 433 (quoting Marra v. Phila. House. Auth., 497 F.3d 283, 300 (3d Cir. 2007)).

Rule 59 "addresses motions for a new trial under 59(a) or to alter or amend a judgment under 59(e)." Graboff v. Colleran Firm, Civ. No. 10-17-10, 2013 WL 1286662, at *14 (E.D. Pa. Mar. 28, 2013). Rule 59(a)(1)(A) provides:

> **(a) In General.**
>
> **(1) Grounds for New Trial.** The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>
>> **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court;

FED. R. CIV. P. 59(a). "A new trial may be granted 'when the verdict is contrary to the great weight of the evidence; that is where a miscarriage of justice would result if the verdict were to stand' or when the court believes the verdict results from jury confusion." Brown v. Nutrition Mgmt. Servs. Co., 370 F. App'x 267, 268-70 (3d Cir. 2010) (quoting Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001)).

## IV.    Discussion

Plaintiff argues she is entitled to a judgment as a matter of law under Federal Rule of Civil Procedure 50(b) with respect to the adequacy of the notice plaintiff gave to defendants concerning her need for FMLA leave. Plaintiff also argues she is entitled to a new trial under Federal Rule of Civil Procedure 59(a)(1)(A) because the court erred when it: (1) dismissed plaintiff's claim for interference; (2) instructed the jury with respect to the "same decision" defense under the mixed-motive framework; (3) denied plaintiff's request for three specific jury instructions; and (4) denied plaintiff's oral motion for judgment as a matter of law with respect to the adequacy of the notice plaintiff gave to defendants concerning her need for FMLA leave. The court will address each of these arguments below.

### A.    Plaintiff is not entitled to a judgment as a matter of law with respect to the adequacy of the notice plaintiff gave to defendants concerning her need for FMLA leave, and the court did not at trial err when it denied plaintiff's oral motion for judgment as a matter of law with respect to plaintiff's notice of need for FMLA-leave.

In the court of appeals' decision in this case, it held that "the adequacy of Lichtenstein's notice [was] a question of fact." Lichtenstein, 691 F.3d at 304. The court explained that the "'critical test' is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" Id. at 303 (quoting Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007)). The court noted that "[h]ow the employee's notice is reasonably interpreted is generally a question of

fact, not law." Lichtenstein, 691 F.3d at 303. The court determined that the trier-of-fact, considering the totality of the evidence, could find the notice Lichtenstein provided to the nursing supervisor was adequate. The court explained:

> Finally, in considering the adequacy of Lichtenstein's notice, we find it instructive to compare the information she conveyed with the guidance provided in 29 C.F.R. § 825.303(b). According to this regulation, an employee whose family member has a serious health condition may provide adequate notice by stating that the "family member is under the continuing care of a health care provider," or, that the family member has a condition that renders her "unable to perform daily activities." Id. A trier-of-fact could reasonably conclude that the information conveyed by Lichtenstein did both. Lichtenstein stated that her mother was still at the hospital, which implies "continuing care," and it could be reasonably inferred that a person brought by ambulance to an emergency room and remaining at the hospital is "unable to perform daily activities."

Id. at 305. The court determined that the trier-of-fact could also find that, based upon the totality of the evidence, plaintiff's notice to the nursing supervisor was not adequate under the FMLA. The court commented:

> Of course, a trier-of-fact could also consider Lichtenstein's failure to provide any further information to UPMC about her mother's condition when she returned to work the very next day. Lichtenstein was not necessarily obligated, however, to provide additional information. The regulations state that if an employee's initial notice reasonably apprises the employer that FMLA may apply, it is the employer's burden to request additional information if necessary. 29 C.F.R. § 825.303(a). **Thus, since we believe there is a genuine dispute about whether Lichtenstein's phone call to the nursing supervisor met this standard, her failure to provide further information on the following day at work does not defeat her claim at this stage.**

Id. (emphasis added). The court denied defendants' motion for summary judgment based upon its determination that a reasonable jury could find plaintiff's notice was adequate under the FMLA.

At trial, plaintiff testified that she called the nursing supervisor on January 3, 2008, and informed the nursing supervisor that her mother was taken by ambulance to the emergency room and that plaintiff could not work that day. At the close of evidence, plaintiff requested a

judgment as a matter of law with respect to the issue of notice under the FMLA, i.e., plaintiff argued a reasonable jury could only find that plaintiff's notice to defendants was adequate under the FMLA. The court denied plaintiff's motion finding that based upon the evidence, the jury could find the information plaintiff conveyed to defendants was not sufficient to allow defendants to determine reasonably whether the FMLA may apply to plaintiff's request.

Defendants in this case do not dispute that on January 3, 2008, plaintiff told the nursing supervisor that her mother was taken to the emergency room by ambulance. (T.T. 3/4/13 (ECF No. 112-1) at 66.) Defendants and plaintiff disagree, however, about the import of that evidence. Plaintiff argues that based upon the information she relayed to the nursing supervisor, the jury could only find plaintiff provided defendants information sufficient to allow defendants to determine reasonably that the FMLA may apply to her request for leave on January 3, 2008. Defendants argue that in accordance with the court of appeals' ruling, which was based upon testimony plaintiff gave at her deposition and is identical to plaintiff's testimony at trial, the jury could find that the information plaintiff conveyed to defendants was not sufficient to allow defendants to determine reasonably whether the FMLA may apply to plaintiff's absence on January 3, 2008.

Viewing the evidence in the light most favorable to defendants, the court agrees with defendants; the evidence, viewed in the light most favorable to defendants, was sufficient for the jury to find plaintiff's notice was not sufficient to allow defendants to determine reasonably whether the FMLA may apply to plaintiff's absence on January 3, 2008. Plaintiff told the nursing supervisor her mother was taken to the hospital by ambulance on January 3, 2008, but plaintiff returned to work the next day and did not mention her mother's condition to defendants. This evidence is probative of whether defendants reasonably believed prior to terminating plaintiff that plaintiff's absence on January 3, 2008 was protected by the FMLA. Based upon the

foregoing, plaintiff is not entitled to a new trial under Federal Rule of Civil Procedure 59 because the court did not err when it denied plaintiff's request for a judgment as a matter of law with respect to the adequacy of the notice plaintiff gave to defendants under Federal Rule of Civil Procedure 50. Plaintiff's post-trial motion with respect to the adequacy of notice will, therefore, be denied.

### B.  The court did not err when it dismissed plaintiff's claim for interference.

Plaintiff in the first amended complaint asserted claims for interference and retaliation against defendants. Prior to trial, however, defendants filed a motion in limine in which they argued plaintiff's interference claim should be dismissed because it was redundant to her retaliation claim. (ECF No. 75.) Plaintiff argued her "interference claim [was] readily distinguishable and premised on a different theory of recovery than her retaliation claim," and should not be dismissed as redundant. (ECF No. 90 at 1.) The court granted defendants' motion and commented:

> The problem I have here is that [plaintiff] was not denied taking her leave on January 3rd or January 8th. So the way it's framed now, she wasn't – her rights to take those leaves on those days were not interfered with.
> …
> The Court of Appeals noted in the decision in this very same case that it wasn't clear whether or not the plaintiff would have an automatic right to an interference claim when that claim is so clearly redundant to the retaliation claims. The court then cited to various circuits which have found redundancy and permitted only the retaliation claim to go forward, but felt that the plaintiff would have met the harder burden under the retaliation claim and so did not really address it.

(H.T. 2/1/13 (ECF No. 121) at 2.) The court's reference to the court of appeals' decision in this case was to the following passage:

> It is not clear to us that <u>Erdman</u> necessarily guarantees that plaintiffs have an automatic right to claim interference where, as here, the claim is so clearly redundant to the retaliation claim. In recent years, several federal courts of appeals have affirmed dismissal of interference claims that—although not necessarily analogous to Lichtenstein's claim here—were duplicative of the plaintiffs' retaliation claims. <u>E.g.</u>, <u>Lovland</u>, 674 F.3d at 811–12; <u>Seeger v.</u>

> Cincinnati Bell Telephone Co., 681 F.3d 274, 282–83 (6th Cir.2012); Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir.2006); see also Atchison v. Sears, 666 F.Supp.2d 477, 489 (E.D.Pa.2009) ("[Plaintiff's] interference claim is identical to his retaliation claim, and premised on the same allegation.... He cannot escape the McDonnell Douglas analysis to prove his case merely by affixing an 'interference' label to one of his duplicative claims. Thus, [plaintiff's] FMLA violation allegations should be analyzed as a retaliation claim."). Since this issue was not raised below nor presented on appeal, we do not address it here.

Lichtenstein, 691 F.3d at 311. Decisions cited by the court of appeals in this passage, i.e., Seeger v. Cinncinati Bell Telephone Co., LLC, 681 F.3d 274 (6th Cir. 2012), Lovland v. Employers Mutual Casualty Co., 674 F.3d 806 (8th Cir. 2012), and Stallings v. Hussman Corp., 447 F.3d 1041, 1051 (8th Cir. 2006), are in accord with this court's decision in this case to dismiss plaintiff's claim for interference.

In Stallings, the court held that when a plaintiff is fired *after* taking and completing FMLA-leave, he or she may sue the employer for retaliation, but not interference, under the FMLA. Stallings, 447 F.3d at 1051. The court noted that "'[a]lthough in some circumstances, a given set of facts will fall clearly into either (a)(1) or (a)(2), it appears that the lines between the two categories are not hard and fast.'" Id. (quoting Dillaway v. Derrante, Civ. No. 02-715, 2003 WL 23109696, at *5 (D. Minn. Dec. 9, 2003)). The court explained:

> In the present case, we conclude that the district court did not improperly analyze Stalling's FMLA claim as one of retaliation instead of interference. First, Hussmann granted every request Stallings made to take FMLA leave; therefore, Stallings has failed to establish that Hussmann and Groninger denied him a benefit to which he was entitled because he received all of the FMLA leave he requested. With regard to Groninger, Stallings failed to present evidence that Groninger was involved in the decision to terminate him. Second, neither Hussmann nor Groninger ever impeded Stallings's use of FMLA leave. Third, only after Stallings returned from FMLA leave did Hussmann question whether Stallings fraudulently used his FMLA leave and fire Stallings. Therefore, Stalling's claim is fundamentally a claim for retaliation and should be analyzed as such.

Stallings, 447 F.3d at 1051. In Lovland and Seeger, the courts relied upon Stallings to conclude that when an employee "received all of the FMLA leave to which he was entitled," and the

employer "did not shortchange his leave time, deny reinstatement, or otherwise interfere with his substantive FMLA rights," the employee cannot sue the employer for interference. <u>Seeger</u>, 681 F.3d at 283; <u>Lovland</u>, 674 F.3d at 811-12.

Like the plaintiffs in <u>Stallings</u>, <u>Lovland,</u> and <u>Seeger</u>, plaintiff took FMLA leave, i.e., she did not report to work on January 3, 2008, and then returned to work upon completion of leave. Plaintiff alleges she was fired after she (1) made her request for FMLA leave, (2) completed leave, and (3) returned to work. Under those circumstances, and in accord with the reasoning of the Courts of Appeals for the Sixth and Eighth Circuits, plaintiff's claim is one for retaliation and not interference.

In plaintiff's motion for a new trial, however, she relies upon the different burdens of proof for claims of interference and retaliation to support of her argument that her interference claim should have been submitted to the jury. A difference in burdens of proof, however, is not a valid reason to instruct a jury on a claim for interference if in form *and* substance it is a claim for retaliation; indeed, in <u>Stallings</u>, <u>Seeger</u>, and <u>Lovland</u>, the courts acknowledged that an employee must prove intent for a retaliation claim, but not for an interference claim. This distinction did not change the courts' decisions that when an employee is fired after exercising his or her rights to FMLA leave, the claim is one for retaliation and not interference.

Plaintiff relies upon 29 C.F.R. § 825.220(c) in further support of her argument that this court erred when it did not submit her interference claim to the jury. (ECF No. 113 at 11.) Section 825.220(c) provides:

> (c) The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring,

promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies. See § 825.215.

29 C.F.R. § 825.220(c). This regulation, however, is not at odds with the court's holding in Stallings that when an employee is fired after completing FMLA leave, he or she may not maintain an action for interference under § 2615(a)(1). In Stallings, the court recognized that some factual scenarios may give rise to a claim for interference under § 2615(a)(1) *and* a claim for retaliation under § 2615(a)(2). For example, in Erdman v. Nationwide Insurance Co., 582 F.3d 500 (3d Cir. 2009), the Third Circuit Court of Appeals held "that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman, 582 F.3d at 509. Under those facts, i.e., when an employer fires an employee after he or she requests FMLA leave, but before he or she completes leave, the employer interfered with the employee taking leave because he or she was fired prior to commencing leave *and* the employer retaliated against the employee for requesting such leave. As the court of appeals cautioned in this case, "[i]t is not clear…that Erdman necessarily guarantees that plaintiffs have an automatic right to claim interference where…the claim is so clearly redundant to the retaliation claim." Lichtenstein, 691 F.3d at 311. This statement is consistent with the court's concerns in Stallings that while some claims may be asserted under either the interference or retaliation provisions, when an employee is fired after requesting and completing FMLA leave, the employee's claim is fundamentally a retaliation claim and interference claims based upon the same facts should be dismissed. Under those circumstances, the court's decision to dismiss plaintiff's interference claim is not at odds with 29 C.F.R. § 825.220(c) and is in accord with the decisions cited by the court of appeals in this case.

Plaintiff alleges she exercised her rights to take FMLA-protected leave, and then was fired for doing so. These facts support a claim for retaliation under § 2615(a)(2)—not

interference under § 2615(a)(1). The court, therefore, did not error when it declined to instruct the jury on an interference claim. Plaintiff's motion for new trial will be denied with respect to her argument that the court erred by dismissing her claim for interference.

### C. The court did not err when it instructed the jury with respect to the "same decision" defense under the mixed-motive framework.

During pretrial motions in this case, the court determined the mixed-motive framework applied to plaintiff's claim for retaliation under the FMLA. In Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), the Supreme Court held:

> once a "plaintiff in a Title VII case proves that [the plaintiff's membership in a protected class] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [that factor] into account."

Gross v. FBL Financial Services, Inc., 557 U.S. 167, 174-75 (2009) (quoting Price Waterhouse, 490 U.S. at 258). Stated another way, "if the defendant initiated an allegedly adverse employment action as the result of both permissible and impermissible motives, the burden of persuasion shifts to the defendant to demonstrate that it would have taken the adverse action notwithstanding the improper motive." Smith v. Allentown, 589 F.3d 684, 690 (3d Cir. 2009) (citing Price Waterhouse, 490 U.S. at 244-45). "This burden-shifting framework has become known as the mixed-motive doctrine." Smith, 589 F.3d at 690. The Third Circuit Court of Appeals has applied the mixed-motive framework to claims asserted under the FMLA. See e.g., Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147 (3d Cir. 2004).

On March 4, 2013, plaintiff out of the presence of the jury moved for a judgment as a matter of law with respect to defendants' affirmative defense "that plaintiff's employment would have been terminated regardless any request for FMLA leave." (T.T. 3/4/13 (ECF No. 119) at 63-53.) Counsel for plaintiff argued:

It is plaintiff's position that there is no evidence to support that defense, and as an affirmative defense, the jury would only consider that argument after they had determined that a negative factor was the January 3rd absence. We don't believe there's any evidence from which this jury could find that the same decision would have been made anyway because if the January 3rd absence wasn't the last straw, there's no evidence that the decision maker would have considered Ms. Lichtenstein's employment without that last straw.

(Id.) The court denied plaintiff's motion, explaining:

It's really a point for argument. There was evidence, particularly when you consider her performance issues, there was the one correspondence from…Cindy Krautz to Ms. Lidey basically complaining about these things and talking about terminating her. And the response was: Before the holidays? So, I think there's enough there to say that there were other factors as well.

…

It's based upon the other evidence coming in about the performance issues that the tardiness wasn't the sole cause of that, that would have been taken anyway. It is somewhat of a close question, though, I will state for the record. I think there is some evidence, it will be for the parties to argue the weight.

(Id. at 64-65.) The court instructed the jury with respect to the mixed motive framework as follows:

If you find that the plaintiff has shown that her taking or requesting leave was a negative factor in the decision to terminate her employment, you must then consider whether defendants have demonstrated by a preponderance of the evidence that they would have taken the same action, i.e., terminated the plaintiff's employment even if they did not use plaintiff's taking or requesting leave as a negative factor. **If you find that the defendants would have terminated plaintiff's employment even without using the plaintiff's taking or requesting leave as a negative factor, your verdict must be for the defendants.**

(Id. at 84) (emphasis added.)

Plaintiff in her motion for a new trial argues that in order for the jury to consider whether defendants would have fired plaintiff without considering the January 3, 2008 absence, i.e., defendant's affirmative defense, the jury must have found "'that the plaintiff has shown that her taking or requesting leave was a negative factor in the decision to terminate her employment.'" (ECF No. 113 at 13 (quoting T.T. 3/4/13 (ECF No. 119) at 84.) Plaintiff explains:

If considering this affirmative defense, the jury would have determined that Lichtenstein's request for and/or taking of FMLA-protected leave on January 3, 2008 was a negative factor in the decision to terminate her. In that event, the jury would have rejected Defendants' contention that December 30, 2007 was the "last straw" which triggered the termination decision because if December 30, 2007 was the "last straw," the jury could not have already determined that January 3, 2008 absence was a negative factor in the decision to terminate Lichtenstein.

(ECF No. 113 at 14-15.) In other words, plaintiff argues that that if defendants considered the January 3, 2008 absence when they fired her, i.e., it was a negative factor, the jury would have rejected defendants' argument that December 30, 2008 was the "last straw," and there is no other evidence to support a reasonable jury finding that defendants would have fired plaintiff if they had not considered the January 3, 2008 absence. According to plaintiff, the court under those circumstances erred by instructing the jury on the "same decision" affirmative defense.

While plaintiff is correct that for the jury to consider defendants' affirmative defense, it would have found defendants considered the January 3, 2008 absence as a negative factor in their decision to fire plaintiff, it does not follow that if the jury believed the December 30, 2008, incident was the "last straw," the jury could not find that defendants considered the January 3, 2008 absence as a negative factor in its decision to fire plaintiff. The jury could have found defendants decided to terminate plaintiff on December 30, 2008, but when Lidey learned about the January 3, 2008 absence, she relied upon that absence in further support of her decision to fire plaintiff, i.e., Lidey considered the January 3, 2008 absence as a negative factor when deciding to terminate plaintiff. This finding is supported by the evidence presented to the jury because defendants did not terminate plaintiff until January 10, 2008, a week after plaintiff's January 3, 2008 absence. In light of the evidence with respect to the number of times plaintiff was late for work, called off work, and caused scheduling problems for her supervisors and coworkers—other than on January 3, 2008—there was sufficient evidence presented to the jury for the jury to find these reasons would have induced defendants to fire plaintiff without

14

consideration of the January 3, 2008 absence. Under those circumstances, the court did not err when it instructed the jury with respect to defendants' affirmative defense under the mixed-motive framework. Plaintiff's motion for a new trial will be denied with respect to her argument that the court erred when it instructed the jury with respect to the mixed-motive framework.

### D. The court did not err when it denied plaintiff's request for three specific jury instructions.

Plaintiff argues that because the court did not provide the jury the *exact* instructions proposed by plaintiff with respect to spoliation and pretext, the jury did not have a complete understanding of the law applicable to this case, and plaintiff is, therefore, entitled to a new trial under Federal Rule of Civil Procedure 59(a).

"A party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995) "It is the responsibility of the trial judge to provide the jury with a clear and accurate statement of the law it is expected to apply in reaching its verdict." McPhee v. Reichel, 461 F.2d 947, 950 (3d Cir. 1972). The trial court has broad discretion in the composition of jury instructions, as long as they are fundamentally accurate and not misleading. Owens, 50 F.3d at 1233 (citing Harrison v. Otis Elevator Corp., 935 F.2d 714, 717 (5th Cir. 1991)). Because the court has broad discretion to compose jury instructions, the court has especially broad discretion in considering a motion for a new trial which complains that the court erred in its initial determination. See Klein v. Hollings, 992 F.2d 1285, 1289–90 (3d Cir. 1993).

The court, upon review of the instructions given to jurors in this case, finds no error in its instructions. The instructions provided to the jury were fundamentally accurate and not misleading; indeed, plaintiff does not argue that the instructions provided to the jury were inaccurate. For the reasons articulated below, plaintiff's motion for a new trial based upon the

court not giving the instructions proposed by plaintiff with respect to spoliation and pretext will be denied.

### 1. Spoliation Instruction

#### a. Background

During trial, Lidey testified on cross-examination that she gave plaintiff an oral warning with respect to plaintiff's tardiness, which was subsequently put into writing and kept in a file at the UPMC Braddock location. (T.T. 3/4/13 (ECF No. 112-1) at 20.) Lidey also testified that another UPMC employee, Cynthia Krautz ("Krautz"), gave plaintiff verbal warnings, which were subsequently put into writing and placed in a file at UPMC Braddock. (T.T. 2/28/13 (ECF No. 117) at 14.) The following exchange took place during plaintiff's cross-examination of Lidey with respect to the file at UPMC Braddock:

> Q. Do you have a copy of that written warning that you claim -- the documentation of the oral warning that was put in writing that you claim was in her personnel file, do you have a copy of that?
>
> A. No. When I left UPMC Braddock, I left everything on-site.

(T.T. 2/26/13 (ECF No. 114) at 49.) Defendants never produced the writing or the UPMC Braddock file to plaintiff during discovery in this case.

During the final charge conference, plaintiff requested the court instruct the jury that it *should* consider defendants' failure to produce the written documentation of the verbal warnings as evidence that the documentation never existed. The court commented: "[I]n this case, we do have a specific request for this type of document and Ms. Lidey said she did review these interrogatories and they were signed, and they were—that file was not turned over by her." (ECF No. 112-1 at 24-25.) The court concluded, however, that it was "not going to tell [the jury] how they [could] consider [Lidey's failure to produce the documentation] in terms of whether the evidence never existed because ***it's sufficiently unclear to the Court that there was evidence of***

*spoliation in this case*." (Id. at 29) (emphasis added.) As a result, the court gave the following instruction to the jury:

> In this case, you have heard testimony from Deborah Lidey, the supervisor for UPMC Braddock who terminated the Plaintiff, regarding the claimed existence of written documentation of verbal warnings that were issued to the Plaintiff. Under the applicable Court Rules, this information was required to be provided to the Plaintiff in advance of trial, and defendants did not provide that written documentation.

(T.T. 3/5/13 (ECF No 112-1) at 30; ECF No. 120 at 10.) In plaintiff's post-trial motion, she requests a new trial under Federal Rule of Civil Procedure 59(a) based upon the court's failure to instruct the jury as follows:

> In this case, you have heard testimony from Deborah Lidey, the supervisor for UPMC Braddock who terminated the Plaintiff, regarding the claimed existence of written documentation of verbal warnings that were issued to the Plaintiff. Under the applicable Court Rules, this information was required to be provided to the Plaintiff in advance of trial, and the Defendants failed to abide by those Rules. During your deliberations, you should consider the Defendants' failure to produce this documentation as evidence that such documentation never existed.

(ECF No. 113 at 19.)  A new trial is warranted pursuant to Rule 59(a) if "a miscarriage of justice would result if the verdict were to stand' or when the court believes the verdict results from jury confusion." Brown, 370 F. App'x at 268-70. The court is not convinced in this case that in light of the instructions given to the jury, a miscarriage of justice would result if the verdict stands or that the verdict resulted from juror confusion.

### b.  The Law

"The spoliation analysis is separate from any analysis regarding spoliation sanctions." Omogbehin v. Cino, 485 F. App'x 606, 610 (3d Cir. 2012) (citing Bull v. United Parcel Service, Inc., 665 F.3d 68, 73 n.5 (3d Cir. 2012)). Spoliation occurs where "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was

reasonably foreseeable to the party." <u>Bull</u>, 665 F.3d at 73; <u>see</u> <u>Indemnity Ins. Co. of N. Am. v.</u>

<u>Electrolux Home Prods., Inc.</u>, 530 F. App'x 107, 111 (3d Cir. 2013). "No unfavorable inference

arises when the circumstances indicate that the document or article in question has been lost or

accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."

<u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 334 (3d Cir. 1995).

### c.  Application of Law to this Case

Assuming for the sake of argument that the evidence in this case supported a finding of

spoliation, the court did not err in the exercise of its discretion when it refused to impose the

sanction suggested by plaintiff, i.e., instructing the jury that because defendants failed to produce

the written documentation, it *should* conclude it did not exist. The court imposed a sanction

explicitly set forth in Federal Rule of Civil Procedure 37. Rule 37 provides:

> **(1) Failure to Disclose or Supplement.** If a party fails to provide information or
> identify a witness as required by Rule 26(a) or (e), the party is not allowed to use
> that information or witness to supply evidence on a motion, at a hearing, or at a
> trial, unless the failure was substantially justified or is harmless. In addition to or
> instead of this sanction, the court, on motion and after giving an opportunity to be
> heard:
>> **(A)** may order payment of the reasonable expenses, including attorney's
>> fees, caused by the failure;
>>
>> **(B)** ***may inform the jury of the party's failure***; and
>>
>> **(C)** may impose other appropriate sanctions, including any of the orders
>> listed in Rule 37(b)(2)(A)(i)-(vi).

FED. R. CIV. P. 37(c)(1)(B). (emphasis added). The imposition of the sanction set forth in Rule

37(c)(1)(B) was supported by the evidence presented to the court, and the court's failure to

instruct the jury as defendants suggest does not warrant plaintiff receiving a new trial.

Plaintiff argues the court should have told the jury that it should consider defendants'

failure to produce the documentation as evidence that it did not exist based upon the following

passage from <u>Bull</u>:

> "When the contents of a document are relevant to an issue in a case, the trier of fact generally *may* receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him. <u>Gumbs v. International Harvester, Inc.</u>, 718 F.2d 88, 96 (3d Cir.1983); <u>United States v. Cherkasky Meat Co.</u>, 259 F.2d 89 (3d Cir.1958)."

<u>Bull</u>, 665 F.3d at 73 (quoting <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 334 (3d Cir. 1995)) (emphasis added). As the foregoing passage indicates whether to impose the adverse inference sanction is within the discretion of the district court, and it is not mandatory that the court instruct the jury in any particular way with respect to spoliation. The court in <u>Bull</u> noted that an appropriate sanction analysis includes consideration of the following factors:

> "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

<u>Bull</u>, 665 F.3d at 74 (quoting <u>Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 79 (3d Cir. 1994)). Consideration of these factors shows the court's jury instruction that defendants were required but failed to produce the written documentation from UPMC Braddock was appropriate and within the court's discretion.

With respect to the first factor, i.e., defendants' degree of fault, defendants have an appreciable level of fault in this case for failing to produce the written documentation of the verbal warnings in light of the duties imposed upon litigants under Federal Rules of Civil Procedure 26 and 37. Lidey knew about the file at UPMC Braddock, and although it was no longer in her control because she left UPMC Braddock, which subsequently closed, there was no evidence that she told her counsel or anyone from UPMC about the file or attempted to obtain the file to produce it to plaintiff. On the other hand, there was no evidence to show what happened to the file after UPMC Braddock closed, e.g., UPMC preserved the file or destroyed it

in the regular course of business. The evidence was inconclusive with respect to whether Lidey or UPMC inadvertently or intentionally failed to disclose the evidence to plaintiff; indeed, counsel for defendants represented to the court that he did not know what written documentation or files Lidey testified about. (T.T. 3/4/13 (ECF No. 112-1) at 18, 21) ("The first I ever heard of this, Your Honor, was when she was on the stand in this case when they were cross-examining her.").

Additionally, the written documentation—if it existed—would have been helpful to defendants' case because it supported Lidey's testimony that plaintiff frequently was tardy and reprimanded for it. The written documentation of the reprimand would have directly supported defendants' theory that plaintiff was fired, in part, because she was excessively late to work and not because she took leave protected under the FMLA. Lidey's testimony with respect to the written documentation, furthermore, was elicited by plaintiff's counsel and not counsel for defendants. Based upon the foregoing, consideration of this factor warranted a sanction imposed upon defendants because they had an appreciable level of fault for failing to provide the evidence to plaintiff. The court could not find that defendants' level of fault is as egregious as plaintiff suggests, however, because there was insufficient evidence with respect to whether the documentation existed or what happened to it after Lidey left UPMC Braddock and the hospital closed.

With respect to the second factor, the degree of prejudice suffered by plaintiff in light of defendants' failure to produce the written documentation is minimal. At trial, plaintiff's counsel cross-examined Lidey twice with respect to the UPMC Braddock file and defendants' failure to produce the file during discovery in this case. Although Lidey testified that the verbal warnings she and Krautz gave were put into writing, her testimony was discredited because the written documentation was never provided to the jury. Plaintiff's counsel emphasized this point on

cross-examination of Lidey. The following exchange took place between plaintiff's counsel and

Lidey:

Q. Did you ever give Jamie Lichtenstein an oral warning about her tardiness?

A. I told her about her tardiness.

Q. Did you give her an oral warning?

A. Yes.

Q. Wouldn't an oral warning be --

A. Verbal.

Q. Aren't verbal warnings then recorded in her personnel file?

A. It would be, yes, I would write something up.

Q. Was there anything written up in her personnel file?

A. If I spoke to her about it, I would write something up and put it in her file.

Q. Okay. I gave your attorney a copy of the personnel file. Actually, it was provided to us by UPMC last night. Did you have a chance to review her personnel file?

A. No.

Q. Well, I will then show you her personnel file. We don't need to mark this necessarily as an exhibit, but perhaps it could refresh your recollection if you could review the  personnel file and see if there's any oral warning write-ups reflected in the personnel file, okay. Before I give you that, though, do you recall whether there were any written warnings given to her as a result of her tardiness?

A. No, there was not.

Q. Any written warnings given to her as a result of her December 1 absence?

A. No, there was not.

Q. Any oral warnings given to her as a result of the December 1 absence?

A. A verbal.

Q. A verbal?

A. Yes.

Q. That would be reflected in the personnel file then?

A. I would write something and put it in there.

Q. So, I would like to ask you if you could review that.

…

Q. Ms. Lidey, have you had an opportunity to look through Jamie Lichtenstein's personnel file?

A. Yes, I have.

Q. Is there documentation of any oral warning to her?

A. This is not a complete employee file. It's missing her Act 3334, all of the competencies, including a new hire orientation checklist and any letters I would have put in here. This is not a complete employee file.

Q. This was the personnel file that was given to us by UPMC, and you're telling us that that's not her complete file?

A. That's correct.

Q. Are you aware of any -- as we sit here today, are you aware of any write-ups or oral warnings in her file?

A. I did a verbal warning. I wrote that up. That would have been in her file.

Q. Did you do any written warnings?

A. A written, yes -- no, not a written, it was an oral, it was a verbal warning.

Q. What was the verbal warning for?

A. For tardies.

(T.T. 2/26/13 (ECF No. 114) at 35-37.) Plaintiff's counsel cross-examined Lidey a second time with respect to defendants' failure to produce the file. The following exchange took place between plaintiff's counsel and Lidey:

Q. Are you aware of any written warning that was given to Jamie Lichtenstein for any of the serious, alleged serious infractions that are on this exhibit?

A. Not a written warning, but a verbal, from Cynthia Krautz.

22

Q. That would have been written up and put in her personnel file, correct?

A. Yes.

Q. And you looked through that personnel file yesterday. Was that oral warning in her personnel file?

A. Her employee file --

Q. Was it in the personnel file that you looked at yesterday?
A. That wasn't her total file.

…

Q. Are you aware that in the course of this proceeding, the plaintiff asked for documents from UPMC and you?

A. Yes, I am aware.

Q. I show you what has been marked as Exhibit 110. This was your and UPMC's response to the request from Jamie Lichtenstein for certain documents.

…

Q. Your name is listed as a defendant on this case, correct?

A. Yes, that's correct.

Q. This is directed to both you and UPMC, correct?

A. Yes, that's correct.

Q. I direct you to the request for production of documents, No. 4. The request is for any and all documents that indicate, reflect, mention and/or concern Jamie Lichtenstein's lateness and/or absenteeism.

A. Can you tell me where that is? I'm sorry.

Q. Page 6. Do you notice that it says UPMC WPIC files, attendance record, and portions of the call-off log. It indicates UPMC Braddock Human Resources and medical file. That would be Jamie Lichtenstein's personnel file, correct?

A. Yes, that is.

…

Q. Did you receive this document?

A. Yes, I have.

Q. Did you do a search for documents in response to the plaintiff's request for documents?

A. I was no longer employed with UPMC Braddock and at this time it had closed, I did not have access to documents.

Q. Did anyone ask you what documents would have been available?

A. I don't remember.

Q. You understand that this response was filed on your behalf as well as UPMC's behalf, correct?

A. Yes, I do. It's requesting the UPMC --

Q. There's no question in front of you. I think you answered the question. I show you now what I'm marking as Exhibit 111. Do you recognize this as another response by you and UPMC to a request for documents from plaintiff Jamie Lichtenstein?

A. I don't remember this document.

Q. Well, let me see if I can refresh your recollection. Take a look at No. 20. It says: All personnel files and other records of Jamie Lichtenstein. And it indicates the UPMC Braddock Human Resources and medical file for Jamie Lichtenstein.

A.      Yes, I see that.

Q. That's what I showed you yesterday, correct?

A. Yes, that's what you showed me.

Q. And now you're saying there's something in addition to what was produced by UPMC and yourself?

A. Each department had a file for each employee that did not have to be part of the Human Resource file. In that file included competencies, completion of orientation, and any verbal discussion with the employee. In the UPMC policy, it also states that any discipline that was verbal discipline did not need to be included in the Human Resource employee file.

Q. Were you personally there when Cynthia Krautz supposedly spoke to Jamie Lichtenstein about the incidents referred to in UU?

A. I was not, Brian Helt was.

Q. Is Brian Helt still employed by UPMC?

A. I believe he is.

Q. Did you yourself ever speak to Jamie Lichtenstein about the issues raised by some nurse in UU?

A. No, my managers did.

Q. Do you know what Jamie Lichtenstein's response was to Cynthia Krautz?

A. No, I don't remember.

Q. Did you ask Cynthia Krautz what was Jamie Lichtenstein's response to these serious allegations?

A. I'm sure we discussed it.

Q. And you don't remember what --

A. I don't remember.

(T.T. 2/28/13 (ECF No. 117) at 14-21.) Along with cross-examination of Lidey, during closing argument, counsel for plaintiff was free to argue that Lidey lacked credibility as a witness because although she testified that plaintiff received verbal warnings and there was a written record of those warnings, defendants failed to produce that evidence to plaintiff or the jury. This is an argument that plaintiff could not have made to the jury had UPMC produced the evidence to plaintiff. Based upon the foregoing, consideration of the factor, i.e., the degree of prejudice suffered by plaintiff, supported the imposition of a sanction upon defendants pursuant to Rule 37(c)(1)(B), but not the instruction suggested by plaintiff that the jury *should* conclude the written documentation did not exist.

The third factor is "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." <u>Bull</u>, 665 F.3d at 74 (quoting <u>Schmid</u>, 13 F.3d at 79). In consideration of plaintiff's counsel ability to cross-examine Lidey about the failure to produce

the written documentation of the verbal warnings and further attack Lidey's credibility during his closing argument, the sanction of instructing the jury that defendants were required but failed to produce the required evidence was sufficient to protect the interests of plaintiff.[1]

Based upon consideration of the foregoing factors set forth in <u>Bull</u>, the court did not err in the exercise of its discretion when it refused to instruct the jury in this case that the jury *should* consider defendants' failure to produce the written documentation as evidence that it did not exist. Accordingly, the verdict did not result from juror confusion and a miscarriage of justice would not result if the verdict stands. Plaintiff's motion for a new trial based upon the spoliation jury instruction must, therefore, be denied.

### 2. Pretext Instructions

Plaintiff requested the following instructions be given to the jury:

> If you find that Plaintiff has shown evidence of inconsistencies and implausibilities in the Defendants' proffered reasons for Plaintiff's discharge, you may infer that the Defendants' basis for discharging the Plaintiff was unlawful.

> If you find that Defendants' stated reason for terminating the Plaintiff is false, you may infer that the Defendants' basis for discharging the Plaintiff was unlawful.

(ECF No. 113 at 19-20.) Plaintiff's counsel requested the instructions quoted above because on cross-examination Lidey gave a new reason for terminating plaintiff. (<u>Id.</u> at 33.) Plaintiff's counsel argued—citing only decisions applying the <u>McDonnell Douglas</u> pretext analysis—that the new reason should be taken into account regardless whether this is a pretext or mixed motive case. (<u>Id.</u> at 33.) Plaintiff's request for the instruction was objected to by defendants because this is not a <u>McDonnell Douglas</u> pretext case, and a pretext charge should not be given. (<u>Id.</u> at 32-33.)

---

[1] Because the court could not conclude defendants were "seriously at fault," it is not necessary to consider whether the sanction imposed would deter similar conduct by others in the future. In any event, Congress implicitly recognized the effectiveness of the sanction of instructing the jury about a party's failure to provide information during discovery in Rule 37(c)(1)(B).

After consideration of plaintiff's request and defendants' objection, the court instructed the jury as follows:

> Ultimately, you must decide whether the plaintiff's taking or requesting qualified leave was a negative factor in the employment action taken by the defendants – her termination. An employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted.
>
> You may find the plaintiff's taking or requesting leave was a negative factor in the defendants' decision to terminate her employment if she has proven that the defendants' stated reasons for its decision are a pretext to hide its decision to terminate her employment because she took or requested FMLA leave. In determining pretext, you may consider whether there are inconsistencies and implausibilities in the defendants' reasons for terminating plaintiff's employment.

(T.T. 3/4/13 (ECF No. 119) at 84.) As discussed above, the court determined this case was a mixed motive case. The court—to accommodate plaintiff's request without turning the charge into a pretext charge—instructed the jury with respect to how it could consider implausibilities and inconsistencies with respect to the plaintiff's burden to prove that her taking or requesting FMLA-leave was a negative factor in defendants' decision to terminate her employment. Conoshenti, 364 F.3d at 147 n.10 (citing Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001)). It must be remembered that in a mixed motive case, the plaintiff has a lesser burden than in a McDonnell Douglas pretext case. Lichtenstein, 691 F.3d at 302.

In any event, if there was an error, it would have been including the concept of inconsistencies and implausabilities in the mixed motive jury instructions. The gist of plaintiff's request was included in the charge, and under the totality of the circumstances, plaintiff cannot assert it was an error or show prejudice. Considering the charge as a whole, the failure to give the *exact* instructions proposed by plaintiff did not result in the court's failing to advise the jury about the appropriate legal standard under which to evaluate whether plaintiff showed that her taking or requesting FMLA-leave was a negative factor in defendants' decision to terminate her employment. See Gutzan v. Altair Airlines, Inc., 766 F.2d 135, 138 ("The failure of the trial

court to instruct the jury as requested does not constitute error so long as the instruction, taken as a whole, properly apprises the jury of the issues and applicable law."). Accordingly, the failure to give the instructions proposed by plaintiff is not a ground to award her a new trial.

**V.     Conclusion**

Based upon the foregoing, plaintiff's motion for new trial and partial judgment as a matter of law will be DENIED. An appropriate order will be entered.


Dated: December 16, 2013                    /s/ JOY FLOWERS CONTI
                                            Joy Flowers Conti
                                            Chief United States District Judge